# Exhibit A

$150.00 PAID

Recpt. # 855910

Check # 3029

| | |
|---|---|
| IN THE STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF AIKEN ) | Civil Action No.: 2005-CP-02-715 |
| Cindy Bates, Vera Bey, James Bush, Alice Bush, Heyward Booker, Alvin El, Marion Williams, and Jerald Young, individually and on behalf of others similarly situated, ) | |
| Plaintiffs, ) | **SUMMONS** |
| vs. ) | |
| Norfolk Southern Corporation, a Virginia Corporation; Benjamin Aiken; Mike Ford; And James Thornton, ) | |
| Defendants. ) | |

TO:  THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your Answer to the said pleading upon the subscribers at their offices, 4400 North Main Street, Columbia, South Carolina 29203, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully submitted,

/s/ Donald Gist

Donald Gist, Esquire
DeAndrea Gist Benjamin, Esquire
GIST LAW FIRM
4400 North Main Street
Columbia, South Carolina 29203
Tel.: (803) 771-8007
Fax: (803) 771-0063

FILED 5-25-2005 @ 2:50pm
Liz Godard
C.C.C.P. & G.S.
Deputy Clerk

IN THE STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF AIKEN )
) Civil Action No.: 2005-CP-02-715
)
Cindy Bates, Vera Bey, James Bush, Alice )
Bush, Heyward Booker, Alvin El, Marion )
Williams, and Jerald Young, individually )
and on behalf of others similarly situated, )
)
       Plaintiffs, )
) **COMPLAINT**
   vs. )
)
Norfolk Southern Corporation, a Virginia )
Corporation; Benjamin Aiken; Mike Ford; )
And James Thornton, )
)
       Defendants. )
)

## I.   INTRODUCTION

COMES INTO COURT, Plaintiff's, through undersigned counsel who files on their behalf and on the behalf of a class of Plaintiffs similarly situated but as yet unidentified to redress the personal injuries and property damages derived from a Norfolk Southern train derailment in Graniteville, Aiken County, South Carolina and the subsequent release of toxic chemicals which occurred on Thursday, January 6, 2005.

## II.   CLASS REPRESENTATION

1. Plaintiffs brings this action on their own behalf and on behalf of all persons, similarly situated. This action should be certified as a class action pursuant to S.C.R.C.P. 23, for the following reasons.

2. The class is so numerous that joinder of all members is impracticable. Thousands of people were adversely affected by this incident. They suffered damages in the past and/or into the foreseeable future, including personal injuries, emotional distress, fear and fright, property damage, diminution of property value, loss of income, business interruption, out-of-pocket expenses, evacuation and inconvenience. A



mass joinder of that many plaintiffs would be impracticable to manage by the Court and by counsel. (S.C.R.C.P. 23(a)(1)).

3. There are questions of law and/or fact common to the class, including the issues of the cause of the derailment and chemical release at issue, Defendants' liability for compensatory and punitive damages, and general causation of damages. (S.C.R.C.P. 23(a)(2)).

4. The claim of the representative plaintiffs are typical of the claims of the class. The representative parties herein have suffered damages in the past and/or into the foreseeable future, including personal injuries, emotional distress, fear and fright, property damage, diminution of property value, loss of income, out-of-pocket expenses, evacuation and inconvenience. (S.C.R.C.P. 23(a)(3)).

5. The representative plaintiffs will fairly and adequately protect the interests of the class. They have no relationship with the defendants in this case. Undersigned counsel for the representative plaintiff will vigorously prosecute this action on behalf of the entire class.

Undersigned counsel have the knowledge and experience to protect the interests of the entire class and are willing to commit the financial resources to prosecute this action on behalf of the entire class. (S.C.R.C.P. 23(a)(4)).

6. The class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This action resulted from a single incident, the harmful effects of which may be objectively defined and identified by the court. Until the time that a more precise geographic location can be identified, the class of persons sought to be represented herein consists of all persons, corporations, firms or entities who suffered damages as a result of the NSC train collision and derailment on January 5th 2005 in Graniteville, South Carolina.

7. The amount in controversy exceeds $100.00 for each member of the Class. (S.C.R.C.P. 23(a)(5)).

8. The prosecution of separate actions by individual members of the class would be impracticable and would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the defendants herein.

9. Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or will substantially impair or impede their ability to protect their interests, especially as it concerns the common issues identified in paragraph 4, above.

10. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other

### III.  PARTIES

11. Plaintiffs Cindy Bates, Vera Bey, James Bush, Alice Bush, Heyward Booker, Alvin El, Marion Williams, and Jearald Young, brings this action on behalf of themselves, and all other persons similarly situated (hereafter collectively "Plaintiff).

The claims, defenses and damages of the representatives Cindy Bates, Vera Bey, James Bush, Alice Bush, Heyward Booker, Alvin El, Marion Williams, and Jearald Young, are typical of the claims, defenses and injuries of each class, and the claims, defenses and injuries of the members of each class are typical of those of the entire class.

12. Representative Plaintiffs Cindy Bates, Vera Bey, James Bush, Alice Bush, Heyward Booker, Alvin El, Marion Williams, and Jearald Young, will fully and adequately protect and represent each class, and all of its members.

13. Made Defendants herein are:

(a) Defendant Norfolk Southern (herein referred to as "NSC") is a railroad corporation which operates trains along lines which run through Aiken County, South Carolina.

(b) Defendant Benjimin Aiken (collectively referred to as Norfolk employees) is an employee of the Norfolk Southern Railroad whose negligent acts caused or contributed to the chlorine spill.

(c) Defendant Mike Ford (collectively referred to as Norfolk employees) is an employee of the Norfolk Southern Railroad whose negligent acts caused or contributed to the chlorine spill.

(d) Defendant James Thornton (collectively referred to as Norfolk employees) is an employee of the Norfolk Southern Railroad whose negligent acts caused or contributed to the chlorine spill.

14. Plaintiff Cindy Bates lives at 356 Aiken Road, Graniteville, South Carolina within the class area and is a resident and real estate property owner affected by the chlorine spill and evacuation; Plaintiffs Vera Bey and Alvin El lives at 109 Mack Lane, Graniteville, South Carolina within the class area and is a resident and real estate property owner affected by the chlorine spill and evacuation; Plaintiffs James Bush and Alice Bush owns a business at 409 Main Street, Graniteville, South Carolina within the class area and is a resident and real estate property owner affected by the chlorine spill and evacuation; Plaintiffs Heyward Booker, Marion Williams, and Jearold Young worked for Defendant NSC and were affected by the chlorine spill and evacuation.

15. Plaintiffs and members of the class, including those who were forced out of their homes/ business Thursday, January 6, 2005, due to Defendants' actions, have sustained real estate damage and/or require future medical monitoring as a result of the toxic spill as described in this complaint.

## IV. FACTS

16. NSC is one the nation's largest rail carriers. L/operates more than 21,000 miles of railroad track in twenty-two states. It has its Operations Control Center, Crew Management Center and operations offices in Atlanta, Georgia. NSC's corporate headquarters are in Norfolk, Virginia.

17. Upon information and belief, NSC's rail operations in South Carolina are controlled and managed from its facility in Atlanta, Georgia.

18. NSC transports a wide array of products on its rail systems, including, but not limited to, dangerous, toxic chemicals.

19. On information and belief, at some time before 2:30 a.m. on January 5, 2005, a NSC locomotive and two freight cars pulled off the NSC main line onto a spur at the Avondale Mills facility in Graniteville, South Carolina, and the crew then left the train (hereinafter referred to as 'Train 1").

20. On information and belief, the crew of this train, the Train 1 Crew previously identified, left the switch from the main line to the spur open, allowing rail traffic on the main line to travel onto the spur.

21. On information and belief, at approximately 2:30 a.m. on January 5, 2005, a second of NSC locomotive (hereinafter "Train 2"), pulling a train of three locomotives and 42 rail cars collided with the NSC's Train 1, which was parked on the Avondale Mills spur.

22. On information and belief, as a result of the collision, at least 13

railcars were derailed, including at least three tank cars containing the chemical chlorine.

22. Upon information and belief, one or more of the tank cars ruptured resulting in the release of a deadly cloud of chlorine gas. Subsequent exposure to the chlorine gas resulted in death or serious injury to many of the class members.

23. Upon information and belief, shortly after the release began, the Aiken County Sheriff and Graniteville Police Departments ordered an evacuation of all people within a one-mile radius of the release. As a result, thousands of people were rousted from their homes and businesses and could not return for one or more days.

24. Upon information and belief, during the release, the prevailing wind and weather conditions resulted in a plume of toxic gas being carried several miles from the Avondale Mills facility and the site where the collision occurred. Upon information and belief, the plume affected all or parts of the County of Aiken and surrounding areas.

25. Upon information and belief, continuously from the time of the collision, NSC's tank cars have been emitting, and will continue to emit, toxic fumes from the site of the derailment into the air, releasing toxic gas and fluids into the ground, streams and water table surrounding the collision site, causing damage to persons, property, plants and animals in its path.

26. As a direct result of the release, and its aftermath, Plaintiff, and the Class of persons Plaintiff represents, has suffered damages in the past and/or into the foreseeable future, including death, personal injuries, emotional distress, fear and fright, property damage, loss of income, out-of-pocket expenses, evacuation and inconvenience.

27. Upon information and belief, at all times pertinent hereto, the Train 1

Crew was employed by NSC to operate freight locomotives and perform related tasks, such as operating switches to move trains onto adjacent rails or sidings.

28. On information and belief, the operation of the track switches was within the scope of the Train 1 Crew's employment with NSC.

## V. FIRST CAUSE OF ACTION
### NEGLIGENCE

29. Paragraphs 1 through 28 are pled as if set forth in full herein.

30. Defendants have a duty to conduct themselves and their operations in a safe manner and to operate and maintain track, switches and locomotives, and to train personnel, so as to prevent collisions that would endanger the communities through which its tracks run.

31. Defendants breached their duties in the following, non-exclusive respects:

   a. Allowing a hazardous situation to exist, including, but not limited to, leaving a siding switch improperly open;

   b. Failing to properly inspect to assure that switches and track were fit for their intended purposes;

   c. Acting in a careless and negligent manner without due regard for the safety of others;

   d. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operation of the train and railroad system;

   e. Inadequately and negligently training and hiring its employees;

   f. Failing to take appropriate action to avoid or mitigate the accident;

g. Negligently implementing policies and procedures to safely operate and maintain the train and track, including switches;

h. Failing to properly inspect, maintain and operate the train, the track, including switches, and other equipment in question, including all contents, components and appurtenances;

i. Employing untrained or poorly trained employees and failing to properly train employees;

j. Failing to ascertain that the track and switches in question were free from defects or were in improper working order;

k. Failing to recognize and properly react to indications and warning signs of the derailment and emissions;

l. Failing to timely evacuate;

m. Failing to timely warn;

n. Any other actions or inactions which may be discovered and proven at trial.

32. As a proximate result of the foregoing, Plaintiffs and the Class have suffered damages, as more particularly set forth above.

33. In the alternative, the damage to plaintiffs would not have normally occurred if Defendant, who was responsible for the ownership, control, operation, use, maintenance, inspection and/or transportation and handling of the hazardous chemicals in the derailed train or tanks, had exercised the high degree of care placed upon it by law in the discharge of these duties, the specific failure of which plaintiffs may not be able to prove, but which was and is within the knowledge of defendants, and which leads to no other conclusion than that defendants were at fault. Therefore, plaintiff specifically pleads, to the extent of its application, the doctrine *of res ipsa loquitur* as to all defendants named herein.

34.  On information and belief, Defendants breached state and/or local laws and/or regulations governing their ownership, control, operation, use, maintenance, inspection and/or transportation and handling of hazardous materials, which were designed to specifically protect against occurrences such as the collision and release, and which were specifically designed to protect the Plaintiffs and the Class against the damages they suffered from the collision and release. Because these laws and/or regulations impose a fixed duty of care, and because Defendant breached that duty, Defendant is guilty of negligence *per se*.

## VI.   SECOND CAUSE OF ACTION
## RES IPSA LOQUITOR

35.  Paragraphs 1 through 31 are pled as if set forth in full herein.

36.  Defendant, NSC has caused to be brought into the State of South Carolina, and/or have controlled and transported in the State of South Carolina, hazardous, toxic substances, including chlorine.

37.  NSC had exclusive custody of said toxic substances, and had complete control over the handling, use, transportation, inspection and/or protection of these dangerous materials.

38.  NSC's activities with respect to the handling, use, transportation, inspection and/or protection of said toxic materials constitute "ultra-hazardous" or "inherently dangerous" activities similar to blasting or the use of explosives.

39.  On information and belief, NSC's ultra-hazardous activities in the handling, use, transportation, inspection and/or protection of said toxic materials were a direct and proximate cause of the collision and chemical release and, as such, Defendant is strictly and absolutely liable to Plaintiffs and the Class for all the damages suffered by them, as more particularly set forth above.

## VII. FOR A THREE CAUSE OF ACTION
## NUISANCE (AGAINST DEFENDANT NSC)

40.  Paragraphs 1 through 39 are pled as if set forth in full herein.

41.  The collision, and the resulting release of toxic chemicals into the air and water, constitute a public and private nuisance in that they impaired the Plaintiffs and the Class in particular, and the public in general, from the enjoyment and free use of their homes and property.

42.  This nuisance was caused by the Defendant NSC's habitual improper handling, use, transportation, inspection and/or protection of hazardous materials which has caused toxic releases in the past, and which continues to emit toxic chemicals into the air and water, which annoys, inconveniences, endangers, and disturbs the plaintiffs, the class, and the public in general, in health, safety and comfort of then" homes and property.

## VIII. FOR A FOURTH CAUSE OF ACTION
## TRESPASS (AGAINST DEFENDANT NSC)

43.  Paragraphs 1 through 42 are pled as if set forth in full herein.

44.  On information and belief, Defendant NSC intentionally handled, used, transported, inspected and/or protected hazardous materials in such a way that the collision and release would inevitably occur, resulting in hazardous toxic chemicals entering, via air and water, upon land, in the legal ownership and/or possession of the Plaintiffs and the Class, thereby making Defendant liable for trespass, without proof of actual harm.

45.  Alternatively, Defendant NSC recklessly or negligently caused hazardous toxic chemicals entering, via air and water, upon land, in the legal ownership and/or possession of the plaintiff and the class, causing harm to the land, thereby making Defendant liable for trespass.

## IX. FOR A FIFTH CAUSE OF ACTION
## PUNITIVE DAMAGES (AGAINST DEFENDANT NSC)

46.     Paragraphs 1 through 45 are pled as if set forth in full herein

47.     Upon information and belief, Defendant NSC knew of the hazards attendant to the handling, use, transportation, inspection and/or protection of the dangerous chemicals it was transporting, and knew that exposure to these chemicals involved a serious risk of personal injury to persons, and damage to property.

48.     In spite of Defendant NSC's knowledge of the hazards associated with chlorine and, its knowledge of the health and property damage risks involved, and its prior history of unauthorized toxic releases, Plaintiffs is informed and believes that Defendant intentionally, or with wanton and reckless disregard for the public safety, failed to take protective measures to prevent the collision from occurring in the first place and/or intentionally, or with wanton and reckless disregard for the public safety, failed to implement safety procedures and/or devices to suppress or control the resulting release.

49.     As a result of the foregoing intentional or wanton and reckless conduct by Defendant, the collision and subsequent release occurred, causing extensive damages to the Plaintiffs and the Class, including death.

50.     Plaintiffs specifically alleges that the handling, use, transportation, inspection and/or protection of the dangerous chemicals was done in such a way as to evince a reckless disregard for the public safety in general and for the Plaintiffs and the Class in particular, and Plaintiffs specifically alleges that such conduct subjects Defendant to absolute liability and punitive damages.

## X. FOR A SIXTH CAUSE OF ACTION
## ATTORNEYS FEES (AGAINST DEFENDANT NSC)

51.     Paragraphs 1 through 50 are pled as if set forth in full herein.

52.     On information and belief, the foregoing wrongful acts of Defendant NSC

was in bad faith, obliging Defendant to pay Plaintiffs attorneys fees and expenses of this litigation.

## DAMAGES

53. Plaintiffs re-allege all matters set forth above.

54. Plaintiffs have sustained some or all of the following damages and ask for the following relief:

The right and necessity to have a home inspector of their choice fully inspect their homes and soil to make certain it is safe to re-inhabit and to accurately inspect and estimate the full amount of property damage to their homes. The right to have all such damage repaired promptly and fully. The right and necessity to have prompt and immediate medical monitoring because of exposure to the dangerous, caustic, and damaging chlorine gas.

(a) The right and necessity to have future medical monitoring at a reasonable frequency and duration as is medically necessary.

(b) The right to full compensation for diminution of their property value in the affected area.

(c) The right to full compensation for per diem economic loss and expense meals and lodging.

(d) The right to full compensation for emotional distress, pain, discomfort and inconvenience.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1. A declaration that this action may be maintained as a class action pursuant to Rule 23 of the South Carolina Rules of Civil Procedure and for an Order certifying this case as a class action.

2.   Compensatory damages outlined above, together with interest, attorneys fees and costs.

3.   Punitive damages with interest, attorneys fees and costs.

4.   For declaratory judgment, declaring that the acts and practices set forth above are a breach of Defendants' obligations to the Plaintiffs for one or more of the reasons set forth in this Complaint, and for an order requiring Defendants to pay all attorneys fees and accountant or auditing fees incurred in this matter, and to pay all other damages and losses sustained by Plaintiffs, for which Plaintiffs are entitled to judgment under law.

6.   And for any other or further relief to which this Honorable Court or a trier of fact deems are just and equitable and to which Plaintiffs are entitled.

Respectfully submitted,

Donald Gist, Esquire
DeAndrea Gist Benjamin, Esquire
GIST LAW FIRM
4400 North Main Street
Columbia, South Carolina 29224
Tel:  (803) 771-8007
Fax:  (803) 771-0063